# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOWARD MORRIS, on behalf of himself and all others similarly situated, | Case No.: 20-cv-4430 |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | |
| ASSICURAZIONI GENERALI GROUP, S.p.A., GENERALI U.S. BRANCH, and GENERALI GLOBAL ASSISTANCE, INC. | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Howard Morris, individually, and on behalf of all others similarly situated, by and through counsel, brings this action against Assicurazioni Generali Group, S.p.A., Generali U.S. Branch, and Generali Global Assistance, Inc. (together, "Defendants"). Plaintiff's allegations herein are based upon personal knowledge and belief as to his own acts, upon the investigation of his counsel, and upon information and belief as to all other matters.

## INTRODUCTION

1.      Plaintiff brings this action on behalf of himself and a class of similarly situated persons who purchased insurance from Defendants, but whose trips were canceled in or after December 2019 due to COVID-19 travel restrictions.

2.      Travel insurance products provide reimbursement in the event of financial loss or hardship related to travel, and cover a wide array of perils associated with travel, including both pre-departure risks, such as the possibility that a traveler will lose pre-paid nonrefundable deposits or payments if a trip needs to be canceled prior to departure, as well as risks that arise exclusively post-departure, such as interruption of a trip, medical or dental emergencies during a trip, and baggage being lost, stolen or damaged.  By its nature, this second category of coverages, post-

departure, cover risks that only arise after travel is underway and to which Defendants are not exposed until and unless insured parties *actually* travel ("Post-Departure Coverage(s)").

3.      Indeed, when an insured purchases a Travel Insurance Plan from Defendants, he or she receives a "Description of Coverage," which Defendants expressly incorporate into the Travel Insurance Plan Defendants underwrite. The Description delineates the different policy benefits actually purchased by the insured through his or her particular Generali Plan, the coverage limits of each corresponding benefit, and finally, the gross premium paid for the entire package of separate coverage options purchased.

4.       Defendants thus can readily determine the pro rata share of the gross premium attributable to each policy benefit—including Post-Departure Coverage—purchased by each insured under that person's specific plan.

5.      Plaintiff and the Class thus purchased travel insurance from Defendants to cover risks that might have arisen only *during* their trips. Due to COVID-19, however, because Plaintiff and the Class were precluded from departing on their trips, Defendants never actually bore the post-departure risks that Post-Departure Coverage was intended to guard against.

6.      After learning of their trip cancellation, Plaintiff and other Class members contacted Defendants for refunds of unearned insurance premiums paid for trips that did not occur. In response, Defendants have refused to provide any refunds, and are instead unjustly retaining the entire premium paid and offering vouchers that require rebooking by December 31, 2020.[1] Given that the pandemic continues to wreak havoc on the travel industry and global economy, this token gesture is unlikely to provide any meaningful value to Plaintiff and the Class.

---

[1] *See* "Request for Travel Insurance Policy Voucher," GENERALI GLOBAL ASSISTANCE https://www.generalitravelinsurance.com/customer/voucher-and-refund.html (Last Accessed June 8, 2020)

7.      Defendants are obligated to return the portion of the premium paid for Post-Departure Coverages because Plaintiff and the Class paid that portion in exchange for Defendants' agreement to cover risks they never actually assumed because the Class' trips never occurred. In short, such premiums are unearned inasmuch as Defendants were never at risk of having to cover the perils of actual travel. As the American Academy of Actuaries Travel Insurance Task Force recognized in its 2018 Report, insurers do not have exposure to post-departure risks until the departure date.[2]

8.      Defendants' blanket refusal to return the unused and unearned premium to purchasers of Defendants' Travel Insurance Plans is unfair, unjust and unlawful. Each member of the proposed Class (defined below) has been similarly injured by Defendants' misconduct, and is entitled to restitution of the portion of the gross premium that Defendants accepted in exchange for insuring against Post-Departure risks for which they never provided any coverage (*i.e.*, assumed the specified risks) in return.

9.      Accordingly, Plaintiff brings this action, on behalf of himself and all others similarly situated, for unjust enrichment and conversion in order to recover insurance premiums paid to Defendant.

---

[2] See *Travel Insurance An Actuarial Perspective,* AMERICAN ACADEMY OF ACTUARIES TRAVEL INSURANCE TASK FORCE, September, 2018 at 18 https://www.actuary.org/sites/default/files/files/publications/TravelInsuranceMonograph_09052018.pdf (explaining that when policies are exclusively covering post-departure risks such as medical costs and trip interruption, no premiums are earned until during the pre-departure period).

## PARTIES

*Plaintiff*

10.     On February 13, 2020, Plaintiff and his wife purchased a Seabourn cruise to travel from Rome to Greece between April 29 and May 9, 2020. On February 13, 2020, Plaintiff also purchased a $1,298.88 travel insurance policy underwritten by Generali U.S. Branch and administered by Generali Global Assistance. His policy number is 20044W4549 and was made from Plaintiff's home in Naples, Florida.

11.     Plaintiff's trip was canceled by Seabourn due to COVID-19 in approximately late March or early April of 2020.

12.     Plaintiff contacted Generali's customer service in April 2020 to request a refund of the insurance coverage Plaintiff purchased because, without the trip occurring, Defendants never assumed the covered risks. Plaintiff repeatedly contacted Generali Customer Service throughout April of 2020, left voice messages on at least three occasions, and sent an email on April 23, 2020, but Generali never responded.

13.     Despite Plaintiff's numerous requests for refunds, Generali has failed to provide Plaintiff with any reimbursement of his insurance premium.

*Defendants*

14.     Assicurazioni Generali Group, S.p.A. is an Italian corporation with its principal place of business located in Trieste, Italy. Generali is one of the largest insurance providers in the world, with 71,000 employees serving more than 61 million customers across the globe.

15.     Generali underwrites insurance policies in the United States through Defendant Generali U.S. Branch. Defendant Generali U.S. Branch is an insurance provider with its principal

place of business in New York, and is licensed to do business in all fifty states and in the District of Columbia.

16.     Generali Global Assistance, Inc. is a New York corporation with a principal place of business in Bethesda, Maryland, and has an additional office in San Diego, California.

17.     Generali Global Assistance is a travel insurance and assistance provider, formerly doing business as CSA Travel Protection. Through its predecessor companies, Generali Global Assistance has been operating in the United States since 1983. Generali Global Assistance administers travel insurance to residents of every state in the United States, and as part of Generali Group has a presence in 25 countries. Together with its international affiliates, Generali Global Assistance generates $1.8 billion in annual revenue by administering travel insurance policies.

18.     Plaintiff alleges on information and belief that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

19.     Accordingly, there exists, and at all times herein mentioned existed, a unity of ownership between each Defendant and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others. Adherence to the fiction of the separate existence of Defendants and each of them, would, under the circumstances set forth in this Complaint, promote injustice. Assicurazioni Generali Group, S.p.A, Generali U.S. Branch, and Generali Global Assistance, as well as their affiliates, thus are hereinafter collectively referred to in this Complaint as "Defendants" or "Generali" unless identified separately.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative Class members defined below; and Defendants and numerous members of the proposed Class, including Plaintiff, are citizens of different states.

21.     This Court has general jurisdiction over Defendants because they have purposefully availed themselves of the benefits and protections of New York by continuously and systematically conducting substantial business in this judicial district. Generali U.S. Branch's principal place of business is in this district, and is the location from which Defendants underwrite insurance policies to residents of this district. Likewise, Generali Global Assistance is incorporated in this district and administers plans to residents of this district.

22.     Venue as to Defendants is proper in this judicial district under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district. Defendants are authorized to conduct business in this district, have intentionally availed themselves of the laws and markets within this district, do substantial business in this district, and are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### *COVID-19*

23.     On January 20, 2020, authorities diagnosed the first official case of COVID-19 in the United States, in a 35-year-old who had recently returned from Wuhan, China to the State of Washington. COVID-19 spread quickly. By January 30, 2020, there were nearly 8,000 confirmed cases of COVID-19 worldwide.

24.     In response, the World Health Organization ("WHO") declared COVID-19 a "Public Health Emergency of International Concern." The next day, President Trump declared a public health emergency regarding COVID-19, and the U.S. State Department banned travel between the United States and China.

25.     Unfortunately for residents of the United States, COVID-19 spread silently, steadily increasing its reach before its existence was detected. On February 29, 2020—the same day the U.S. government issued a "do not travel" warning and prohibited travel between the United States and several countries with COVID-19 outbreaks—the  State of Washington became the first state to declare a state of emergency due to COVID-19. It would not be the last to do so.

26.     On March 11, 2020, the WHO reclassified COVID-19 as a worldwide pandemic. That same night, President Trump made a televised address from the Oval Office during which he announced a moratorium on all flights from Europe (excluding Great Britain) for 30 days, only to extend that ban to Great Britain the very next day.

27.     The President declared a "National Emergency" two days later, and, on March 15, 2020, the Center for Disease Control recommended avoiding gatherings of 50 people or more. The next day, the U.S. federal government recommended avoiding groups of 10 people or more.

28.     By March 23, 2020 the United States had reported more confirmed cases of COVID-19 than any other country in the world.

29.     By the end of March, 2020 the governors of most states had declared states of emergency due to COVID-19, and state and local officials across the country had issued stay-at-home orders that canceled public events, closed schools, and prohibited unnecessary travel.

30.     As a direct and proximate result of this unprecedented crisis, by March 2020 many insured trips, including Plaintiff's cruise to Greece, were canceled or postponed. Trips insured by Generali continued to be canceled or postponed in the months that followed.

### *Defendants' Insurance Policy Terms*

31.     Generali's description of coverage describes insurance provided against separately enumerated risks, each of which is detailed below. The insurance coverages provided are found in the schedule of benefits, and the description of coverage attached to a policy holder's confirmation letter. The maximum limits per person and per plan listed below use the figures set forth in Plaintiff's plan as an example.

| Insurance Coverages Provided | Maximum Limit Per Person | Maximum Limit Per Plan |
|---|---|---|
| (1) trip cancellation | $6,300 | $12,600 |
| (2) trip interruption, | $9,450 | $18,900 |
| (3) travel delay | $1,000 | $2,000 |
| (4) baggage coverage | $1,500 | $3,000 |
| (5) baggage delay, | $500 | $1,000 |
| (6) medical and dental coverage | $250,000 | $250,000 |
| (7) accidental death and dismemberment—air flight accident | $100,000 | $200,000 |
| (8) rental car damage, | $50,000 | $50,000 |
| (9) emergency assistance and transportation, | $1,000,000.00 | $1,000,000 |
| (10) missed connection, | $1,000 | $2,000 |
| (11) Accidental death and dismemberment–travel accident | $50,000 | $100,000 |

32.     Plaintiff's confirmation of coverage letter, schedule of benefits, and description of coverage are attached as Exhibit 1.

33.     Plaintiff, through his plan, was insured up to a maximum of $1,639,500. Of that only $12,600 in coverage, *i.e.*, 0.77% of total risk covered by the policy, related to a pre-departure risk: trip cancellation. The remaining $1,626,900 in insurance coverage pertains to risks 2-11, all of which relate to risks that do not arise, and thus are not assumed, unless and until a trip commences.

34.     The policy language provides that coverage, except for trip cancellation and trip interruption (items 1 and 2), "will take effect on the later of: the date the premium payment has been received by us; or the date and time you start your Trip; or 12:01 A.M. local time at your location on the Scheduled Departure Date of your Trip." (Description of Coverage at 18). The description further provides that trip interruption coverage begins on the scheduled departure date—in Plaintiff's case, April 29, 2020.

35.     Therefore, Defendants could neither have assumed the risks covered by, nor provided Plaintiff coverage for, Items 2-11 until April 29, 2020. But well before that date, the trip had been canceled by Seabourn.

36.     The Class members' plans similarly enumerate different categories of risk. Descriptions of coverage, available as "Standard," "Preferred," and "Premium" are available on Generali's website.[3] In each case, trip cancellation is the only risk that attaches, and which Defendants cover, before the date of departure. In short, in each plan, Post-Departure Coverage begins only after Generali receives the premium and (at minimum) the date of departure arrives.

37.     The policy fails to address whether Defendants will refund unearned, risk-free premiums when trips are canceled prior to departure. Defendants are obligated to return that

---

[3] *See* "Compare Travel Insurance Plans,"  GENERALI GLOBAL ASSISTANCE https://www.generalitravelinsurance.com/view-travel-insurance-plans.html (last access June 8, 2020)

portion of the gross premium that Plaintiff and the Class paid for benefits exclusively covering post-departure risks that Defendants never assumed. Defendants had not earned these premiums, as they assumed no risk and provided no consideration in exchange for the premiums Plaintiff and the Class paid for those benefits.

38.     The travel insurance underwriters use sophisticated risk calculation methods to estimate their risk exposure throughout the course of an insured's trip.[4] Because there are distinct types of coverage with different starting dates that are combined for sale under the umbrella of each plan, Defendants can identify the pro rata share of the gross premium attributable to Post-Departure Coverages.

39.     On May 7, 2020, Generali announced that it would issue vouchers for future use on trips booked by December 31, 2020,[5] but has failed to issue cash refunds to Plaintiff and the Class for Post-Departure Coverages on trips canceled due to COVID-19. Defendants' practice of failing to refund premiums paid for Post-Departure Coverage is systematic and uniform whenever an insured's trip is canceled before he or she departs and the trip begins.

## CLASS ALLEGATIONS

40.     Plaintiff brings this action, individually, and on behalf of a nationwide class, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

**Nationwide Class**:
All persons in the United States who purchased travel insurance through Defendants and had their trips canceled due to COVID-19 travel restrictions.

---

[4] See *Travel Insurance An Actuarial Perspective,* AMERICAN ACADEMY OF ACTUARIES TRAVEL INSURANCE TASK FORCE, September, 2018 https://www.actuary.org/sites/default/files/files/publications/TravelInsuranceMonograph_090520 18.pdf
[5] *See* Coronavirus (COVID-19) Advisory and FAQs: A Message from our CEO, GENERALI GLOBAL ASSISTANCE, May 7, 2020, https://www.generalitravelinsurance.com/position-statements/coronavirus.html (last accessed June 8, 2020).

41.     In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure, Rule 23(c)(5), Plaintiff seeks to represent the following state class only in the event that the Court declines to certify the Nationwide Class above. Specifically, a "State Class" consisting of the following:

**Florida Class:**
All persons in Florida who purchased travel insurance through Defendants and had their trips canceled due to COVID-19 travel restrictions.

42.     Excluded from the Class(es) are: (a) Defendants; (b) Defendants' affiliates, agents, employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family.

43.     **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. The exact number and identity of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. Plaintiff believes, and on that basis alleges, that the Class consists of thousands of people. The number of Class members can be determined based on Defendants' records.

44.     **Commonality**: Common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a.   Whether Defendants are required to provide partial refunds for risks that do not attach until after the scheduled departure of a trip when the trip is canceled;

    b.   Whether Defendants are required to refund unearned premiums; and

    c.   Whether Defendants were unjustly enriched by their conduct.

45.     **Typicality**: Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members.

Plaintiff's and Class members' claims all arise out Defendants' uniform conduct, statements, and unlawful, unfair, and deceptive acts and practices.

46.     **Adequacy**: Plaintiff has no interest that conflicts with the interests of the Class, and is committed to pursuing this action vigorously. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

47.     **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals. By contrast, the Class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIOLATIONS ALLEGED

### COUNT I

### UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class or, in the alternative, the State Class)**

48.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

49.     Plaintiff and the Class conferred a direct benefit on Defendants by paying insurance premiums.

50.     Defendants knowingly and willingly accepted and enjoyed the benefits conferred on them by Plaintiff and the Class.

51.     Defendants voluntarily accepted and retained these benefits, with full knowledge and awareness that, as a result of the current pandemic, Plaintiff and the Class would not, and did not, receive the benefit of their bargain that had been represented by Defendants and that reasonable consumers would expect.

52.     Defendants' retention of these benefits is unjust and inequitable.

53.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the Class are entitled to recover their pro rata share of the gross insurance premiums which are attributable to Post-Departure Coverages, and for attorneys' fees, costs and interest.

### COUNT II

### CONVERSION
**(On Behalf of the Nationwide Class or, in the alternative, the State Class)**

54.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

55.     Plaintiff and the Class are entitled to a refund of monies paid in exchange for Generali Travel Insurance for the post-departure risks.

56.     Plaintiff and the Class have demanded that Generali return their property.

57.     Defendants have refused to issue refunds to Plaintiff and the Class, and thus have, unlawfully and without authorization, assumed and exercised dominion and control over that property to the exclusion of, or inconsistent with, the rights of Plaintiff and the Class.

58.     Defendants' conversion has damaged Plaintiff and the Class in the amount of the premium paid for their Post-Departure Coverages.

59.     Plaintiff and the Class are entitled to recover the amount each paid to Defendants for their pro rata share of the gross insurance premiums which are attributable to Post-Departure Coverages, and for attorneys' fees, costs and interest.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court:

A.  Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.  Appoint Plaintiff as the representative of the Class and his counsel as Class Counsel;

C.  Award actual damages and equitable monetary relief to Plaintiff and the Class and/or order Defendants to return to Plaintiff and the Class the amount each paid to Defendants;

D.  Award pre-judgment and post-judgment interest on such monetary relief;

E.   Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to issue refunds to any member of the Class who requests a refund;

F.   Award reasonable attorneys' fees and costs; and

G.   Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff, on behalf of himself and the putative Class, demands a trial by jury on all issues so triable.

Dated: June 10, 2020                    Respectfully submitted,


*s/      David E. Kovel*
David E. Kovel
**KIRBY McINERNEY LLP**
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
Email: dkovel@kmllp.com

*Local Counsel for Plaintiffs and the Class*

Bryan L. Clobes
**CAFFERTY CLOBES MERIWETHER
      & SPRENGEL LLP**
205 North Monroe
Media, Pennsylvania 19063
Telephone: (215) 864-2800
Email: bclobes@caffertyclobes.com

Daniel O. Herrera
Brian P. O'Connell
**CAFFERTY CLOBES MERIWETHER
      & SPRENGEL LLP**
150 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 782-4880
Email: dherrera@caffertyclobes.com
            boconnell@caffertyclobe.com

Joseph G. Sauder
**SAUDER SCHELKOPF LLC**
1109 Lancaster Ave.
Berwyn, PA 19312
Telephone: (888)-711-9975
Email: jgs@sstriallawyers.com

*Counsel for Plaintiffs and the Class*